AUGUST HERRING *vs.* THE DISTRICT OF COLUMBIA.

LAW No. 21,783.

{ Decided March 2, 1885.
{ The CHIEF JUSTICE and Justices MAC ARTHUR and JAMES sitting.

1. A municipality is not liable for damage to private property, occasioned by the accumulation of water within a square left below grade in making a public improvement.

2. In the process of public improvements, a municipality so raised the grade of certain streets as to leave the enclosed square below the new grade thus established, and turned a natural stream into a sewer in such a way as to leave the old channel exposed within the limits of the square. The owner of property within the square did not conform his premises to the new grade :

*Held,* That the municipality was not liable for damage to such property occasioned by the accumulation of water within the square, notwithstanding one of the streets crossed the old channel, and the raising the grade of that street destroyed a former culvert through which the stream had flowed.

STATEMENT OF THE CASE.

This action was instituted on April 2d, 1880, and was first tried at the October Term of the Circuit Court, resulting in a verdict and judgment in favor of the plaintiff. On appeal, that judgment was reversed by the court in General Term, and a new trial ordered. (See the report of the case, 2 Mackey, 87.) In the light of the opinion of the General Term, the declaration was amended by striking out so much thereof as counted upon alleged negligence in respect of a plan of sewerage adopted by the defendant in the premises. The case made under the amended declaration was as follows :

The plaintiff was the owner of a certain dwelling house and lots in square No. 616, in the city of Washington, through which square there ran, diagonally, a natural stream of water, flowing, by means of a culvert, through and under North Capitol street, the eastern boundary of the square. In the course of certain public improvements, the defendant caused the grade of O street, the southern boundary of the square, and on which the plaintiff's prem-

ises faced, to be greatly raised; whereby the plaintiff's premises were thrown below grade, and the falling rain water was drained thereupon. In addition, the defendant built along First street, the western boundary of the square, and thence eastwardly along O street, a large sewer, entirely above the level of the plaintiff's premises.

At some distance to the north of square 616, the sewer thus built was so constructed as to take in the natural stream at that point, so that the whole of the stream, except so much thereof as might be said to be between the last-mentioned point and the southeastern corner of the square, was taken into and carried off by the sewer. And, finally, in pursuance of the general plan of improvement, the grade of North Capitol street was also raised, and the culvert through which the stream had formerly flowed under that street was destroyed, the street being built solidly up to the new grade.

Along so much of the bed of the former stream as had been left (that is to say, along that part lying between the point at which the stream entered the sewer and the site of the former culvert at the southeastern corner of square No. 616), were several springs, and the ground sloped towards the former channel of the stream, so that the falling rain water ran down into it. By these means, a large quantity of water had accumulated at North Capitol street, where the culvert formerly was, and, backing up in the old channel, overflowed the plaintiff's premises, and entered the lower floor of his house, to a considerable depth at times.

For the damage thus occasioned, the plaintiff brought suit. It appeared in evidence that before building his house, he had ascertained the future grade, and had so built that the lower story of his house would serve as a basement when the street should have been raised to such grade; but after the new grade was established, he did not raise any one of his lots to conform thereto.

Under instruction by the court, the jury found for the defendant.

BIRNEY & BIRNEY for plaintiff:

1. The defendant is liable, as having stopped a natural watercourse. After the building of the sewer and the raising of North Capitol street, the springs and the falling rain water continued to flow into the channel as before. This was a watercourse, according to all the authorities. Washb., Eas. & Serv. (2d ed.), 268, 272; 6 Wait's Ac. & Def.. 258, and cases; Angell on Watercourses, 126–141, and cases.

2. The result of the defendant's action in the premises was a direct invasion of the plaintiff's property. This is a taking within the meaning of the Constitution for which the plaintiff is entitled to compensation. St. Peter *vs.* Denison, 58 N. Y., 423; Pumpelly *vs.* Green Bay Co., 13 Wall., 181.

FRANCIS MILLER and HENRY E. DAVIS for defendant:

The defendant is not liable, as the damage was caused in the prosecution of a public improvement, involving change of grade of public streets. There is nothing in the case to take it out of the well-known general rule. The defendant rightly assumed that the plaintiff, and all other lot owners in the square concerned, would conform their premises to the new grade. If this had been done, the channel of the former stream at that point would have disappeared, and the damage occasioned the plaintiff would have been impossible. A public improvement which involves the utter annihilation of a stream, does not stop the stream in the sense in which a city is liable for damming a watercourse so as to flood the land of the citizen.

Mr. Justice JAMES delivered the opinion of the court.

In this case the plaintiff claims that the District of Columbia, in constructing a street which crossed a ravine, blocked up and stopped a waterway, thereby causing the formation of an extensive pond, which overflowed his premises. In his declaration he states two causes: first, that

there was a natural stream fed by springs; and, secondly, that the same conduit at the bottom of the ravine was the waterway for the surface drainage. But he, finally, stood upon the latter ground, for the testimony showed that the spring stream had been diverted far above that by a sewer, and that, substantially, the water-course spoken of consisted of the intermittent flowing of the surface water after it had drained down off the surface of the adjoining land into this stream bed.

He cited cases to show that the arresting of the flow of the natural stream, in cases of that kind, made the municipality responsible. Then he proceeded to argue that if there was a stream, formed, it is true, by surface water, there was no distinction between the two;. that it was the arresting not of surface water, but of a stream. And he cited a case (Rose *vs.* St. Charles, 49 Mo., 509) where the court had held a municipality responsible for arresting a stream which during part of the year did not flow. He also adduced a passage from Judge Dillon's work on Municipal Corporations, in which a doubt is expressed of the propriety of the ordinary rule when it was applied to the formation of a pond under these circumstances. But the author gives the cases in a foot note, remarking that the authorities thus far were rather the other way.

For the time that it flows this is a stream of water, but the whole circumstances are the result of the formation of a piece of land below grade, and although the flowage does thus accumulate at the bottom of a ravine, and does temporarily constitute a stream, we feel obliged to regard it as the method of action of surface water produced by the surface form of the land.

We do not, therefore, perceive any reason for holding the municipality for results which were caused primarily by the situation of the land below grade. It can hardly be said that the municipality has produced this injury, when an intervening fact occurs, namely, the situation of the land below the grade. If the owner of the land chooses to remain in that condition, he may lawfully do. so, but he takes the

consequences of his situation. We think, therefore, that these circumstances would not impose any liability on the part of the city when it comes to exercise its lawful power of making streets on a certain grade.

For these reasons we affirm the judgment.